# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BATON ROUGE VENTURES, LLC, ET AL.**           **CIVIL ACTION NO.**

**VERSUS**                                                    **20-628-JWD-EWD**

**CEDAR GROVE CAPITAL, LLC**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 21, 2025.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BATON ROUGE VENTURES, LLC, ET AL.**                 **CIVIL ACTION NO.**

**VERSUS**                                            **20-628-JWD-EWD**

**CEDAR GROVE CAPITAL, LLC**

### MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

On appeal, this case was remanded from the United States Fifth Circuit Court of Appeals "for further consideration and findings regarding the citizenship of the parties for purposes of diversity jurisdiction."[1]  In response to this Court's Order,[2] Baton Rouge Ventures, LLC ("Baton Rouge Ventures") and Charal Baton Rouge, LLC ("Charal Baton Rouge") (together, "Plaintiffs") and Cedar Grove Capital, LLC ("Defendant") submitted supplemental briefing on subject matter jurisdiction, along with supporting exhibits.[3]

The evidence now provided establishes that the parties are not of completely diverse citizenship.  Specifically, a limited liability company member of Baton Rouge Ventures unwinds to include an individual investor member, who is a citizen of New York, as is one of Defendant's individual members. It is recommended that this case be returned to the Fifth Circuit with this finding.[4] However, as the Court retains collateral jurisdiction to evaluate sanctions, it is further

---

[1] R. Doc. 170, p. 3.

[2] R. Doc. 171.

[3] R. Docs. 178 and 182 (Plaintiffs' Memorandum on Diversity Jurisdiction and exhibits (which are filed in the record several times); R. Doc. 179 (Defendant's Brief on Subject Matter Jurisdiction and exhibits); R. Doc. 184 (Plaintiffs' Reply to Defendant's brief); and R. Doc. 183 (Defendant's Response to Plaintiffs' Memorandum). As the sole issue before the Court on remand is the parties' citizenship, arguments unrelated to that issue are not considered here, although it is recommended that a hearing be held as to whether sanctions should be imposed on Plaintiffs and/or their attorneys.

[4] Because there is a lack of subject matter jurisdiction, the case should be dismissed (*see*, Fed. R. Civ. P. 12(h)(3)); however, the opinion from the Fifth Circuit remanding this case for consideration of the citizenship issue says, "[U]pon

recommended that a hearing be held to consider whether the imposition of sanctions against Plaintiffs and/or their counsel is appropriate.[5] The Motion for Expedited Consideration, filed by Defendant, will be denied as moot.[6]

## I.   BACKGROUND

On September 21, 2020, Plaintiffs filed their Complaint for Declaratory Judgment ("Complaint") against Defendant in this Court, alleging that Defendant breached a Purchase Agreement with Plaintiffs, causing damages. Plaintiffs' Complaint asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[7]   Defendant filed its Answer, Affirmative Defenses and Counterclaim against Plaintiffs, alleging that Plaintiffs breached the Purchase Agreement.[8]

Less than a month after the Complaint was filed, the Court issued a briefing Order *sua sponte* questioning whether there was complete diversity of citizenship.[9] As noted in the October 19, 2020 briefing Order, the Complaint did not adequately establish the citizenship of the parties, which are mostly comprised of limited liability companies ("LLCs"), because the underlying members of the LLCs were not identified, as required.[10]   The briefing Order explained the legal

---

making this determination, the district court shall return the case to this court for further proceedings." R. Doc. 170, p. 3.

[5] Defendant previously filed a Motion for Sanctions Against Baton Rouge Ventures, LLC, *etc.,* which was denied without prejudice to re-urging after the issue of jurisdiction was determined. R. Docs. 174, 176.

[6] R. Doc. 187.

[7] R. Doc. 1, ¶4.

[8] R. Doc. 4.

[9] The Complaint sufficiently alleged that the amount in controversy was met based on allegations that Defendant owed Plaintiffs more than $75,000 under the terms of the Purchase Agreement. Plaintiffs also specifically pleaded that the amount in controversy exceeded $75,000, exclusive of interest and costs. *See* R. Doc. 1, ¶¶4, 14, 32-33 and prayer for relief, seeking disbursement of Defendant's escrowed deposit of $300,000 as stipulated damages, as well as contractual attorney's fees and costs.  Defendant admitted that the amount in controversy was met in its Answer. R. Doc. 4, ¶4.

[10] *See,* R. Doc. 6, pp. 1-2, noting that the original Complaint alleged only that the underlying unidentified members of both Plaintiffs were citizens of Florida, and the underlying unidentified members of Defendant were individual citizens

standards governing the requirements for pleading the citizenship of LLCs.[11] Plaintiffs were ordered to substitute their Complaint with one that identifies each of the members of the LLCs (including LLC members at every downstream layer), and their respective citizenships in accordance with the requirements of 28 U.S.C. § 1332(a) and (c).

Plaintiffs timely responded to the Court's briefing Order with their Amended and Restated Complaint for Declaratory Judgment.[12] Plaintiff Baton Rouge Ventures alleged that it had three members, also LLCs.[13]

- The first member was identified as DLP Capital Partners, LLC, alleged to have four members:

    o DLP Real Estate Capital, Inc., a Florida corporation with its principal place of business in Florida;

    o Robert Peterson and Barry DeGroot, Florida citizens; and

    o the Wenner Family Trust I ("Wenner Trust"), whose trustee is Donald R. Wenner, Sr. ("Wenner"),[14] a Florida citizen.[15]

---

of New York, or alternatively, that none of Defendant's members were Florida citizens. The original Complaint was subsequently amended in response to the briefing Order, and the amended Complaint was substituted for the original Complaint. R. Doc. 8.

[11] R. Doc. 6, p. 2, citing *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (the citizenship of a limited liability company is determined by the citizenship of all its members), and noting that allegations that members of LLCs are "citizens of Florida" and "citizens of New York" are insufficient, as members must be specifically identified, citing *Nunez v. ACE Am. Ins. Co.,* No. 17-1593, 2017 WL 6997341, at *4 (M.D. La. Dec. 28, 2017), report and recommendation adopted, No. 17-1593, 2018 WL 493398 (M.D. La. Jan. 16, 2018) ("Without setting forth each member of USAL Holdings, LLC distinctly, and alleging the citizenship of such member in accordance with the rules applicable to that particular member, the court is unable to determine whether federal subject matter jurisdiction exists. Though USAL previously argued it is not required to distinctly identify the members of USAL Holdings, LLC, the weight of authority on that issue is to the contrary.") (string cite omitted).

[12] R. Docs. 7, 8.

[13] *See*, R. Doc. 1, pp. 1-2, ¶1.

[14] Wenner is also CEO and controlling owner of DLP Real Estate Capital, Inc., an underlying member of Baton Rouge Ventures. R. Doc. 179-7, p. 12.

[15] As noted by the U.S. Fifth Circuit Court of Appeals ("Fifth Circuit") in an Order issued during the appeal of this case, "The law is unclear as to whether the trust's citizenship in this instance is determined by the citizenship of the trustee or by the citizenship of the trust's beneficiaries," with "this instance" involving the citizenship of a trust for diversity purposes when the trust is a downstream member of an LLC that is a member of one of the Plaintiffs. No. 23-30741, *Baton Rouge Ventures, L.L.C., et al v. Cedar Grove Capital, L.L.C.*, (5th Cir. July 9, 2024), R. Doc. 49, p. 1.

As all its members unwind to Florida citizens, DLP Capital Partners, LLC was alleged to be a citizen of Florida.

- The second member of Plaintiff Baton Rouge Ventures was identified as Good as New Ventures, LLC, which has two members:

  o Wenner, a Florida citizen, and

  o DLP Capital Partners, LLC, a Florida citizen, *see above*.

Therefore, Good as New Ventures, LLC was also alleged to be a citizen of Florida.

- The third member of Plaintiff Baton Rouge Ventures was identified as DLP Preferred Returns Equity Fund LLC, which was alleged to have two members:

  o DLP Capital Partners, LLC, a Florida citizen, *see above*, and

  o DLP PREF Management, LLC, whose sole member is DLP Capital Partners, LLC (same).

Therefore, DLP Preferred Returns Equity Fund LLC was also alleged to be a citizen of Florida.

Based on the allegations in the amended Complaint unwinding its citizenship to either an individual or a corporation,[16] Plaintiff Baton Rouge Ventures, LLC was adequately alleged in the amended Complaint to be a citizen of Florida. The amended Complaint alleged that Plaintiff Charal Baton Rouge had one member, Charal Properties, LLC, whose sole members were M. Allen

---

[16] *Nunez*, 2017 WL 6997341, at *4, citing *Randolph v. Wyatt*, No. 09-2020, 2010 WL 299257, at * 1 (W.D. La. Jan. 15, 2010) ("for each member of an LLC that it itself an LLC or partnership, its members and their citizenship must be identified and traced up the chain of ownership until one reaches only individuals and/or corporations because 'only natural person and corporations have a legal existence—for diversity purposes—that is not dependent on the citizenship of their constituent members.'").

Hatfield and Charlene Hatfield, Florida citizens.[17] Therefore, Plaintiff Charal Baton Rouge Ventures, LLC was also alleged to be a citizen of Florida.

The amended Complaint alleged that Defendant Cedar Grove Capital, LLC had two members, Aaron Gorin and Steven Levitz, both New York citizens.[18] Thus, complete diversity of citizenship between the parties was adequately alleged.[19]

The case proceeded through discovery, including discovery regarding the citizenship of Plaintiffs.[20] The parties' cross motions for summary judgment were denied,[21] and a 3-day jury trial was held. At the conclusion of the trial, the jury rendered a verdict against Plaintiffs and in favor of Defendant on its counterclaim for $7,000,000 in damages, along with pre- and post-judgment interest.[22] Plaintiffs appealed the judgment.[23] While on appeal, the Fifth Circuit issued an Order, directing the parties to submit additional briefing addressing the citizenship of the Wenner Trust (one of the underlying members of Baton Rouge Ventures' member, DLP Capital Partners, LLC), and ordering Plaintiffs to disclose the citizenship of the Wenner Trust's beneficiaries.[24] Plaintiffs responded, alleging that the Wenner Trust is an "ordinary" trust, that, per *Americold Realty Trust v. Conagra Foods, Inc.*,[25] takes the Florida citizenship of the trustee.

---

[17] R. Doc. 1, p. 2, ¶2.

[18] R. Doc. 1, p. 2, ¶3.

[19] *See also*, R. Doc. 9, pp. 1-2 (parties' Joint Status Report, which alleges that Plaintiffs are Florida citizens and Defendant is a New York citizen); and R. Doc. 93, p. 1 (parties' Pretrial Order, alleging complete diversity of citizenship).

[20] *See, e.g.,* R. Doc. 179, p. 5.

[21] R. Doc. 88.

[22] R. Docs. 138, 141. Defendant was also awarded $286,133.02 in attorney's fees per the parties' Stipulation. R. Docs. 148, 149.

[23] R. Doc. 146. Defendant engaged in post-judgment discovery in order to determine Plaintiffs' assets for satisfaction of the judgment. *See, e.g.,* R. Docs. 160, 166.

[24] No. 23-30741, R. Doc. 49 (5th Cir. July 9, 2024).

[25] 577 U.S. 378, 382-83 (2016) (citizenship of a Real Estate Investment Trust is determined by all of its members, but noting that, "[f]or a traditional trust, there is no need to determine its membership, as would be true if the trust, as an

However, Plaintiffs also identified the Florida citizenship of the beneficiaries, Wenner's two minor children, and thus confirmed that the Wenner Trust is a Florida citizen, as pleaded in the amended Complaint, because the trustee and beneficiaries are all domiciled in Florida.[26] Notably, however, for the first time since the institution of this case, Plaintiffs also alleged in response to the Fifth Circuit's briefing Order, that one of Baton Rouge Ventures' members, DLP Preferred Returns Equity Fund LLC, originally alleged to unwind only to Florida citizens, has an ownership structure that contains an individual investor, Warren Esanu, who is domiciled in New York, which destroys diversity.[27] The Fifth Circuit held the appeal in abeyance and remanded the matter to this Court for further findings regarding the citizenship of the parties, which was referred to the undersigned for recommendation.[28]  The matter is fully briefed and ripe for resolution, and oral argument on the issue of the citizenship of the parties is not necessary.[29]

## II.    LAW AND ANALYSIS

### A.  Legal Standards

"Federal courts are courts of limited jurisdiction…It is to be presumed that a cause lies outside this limited jurisdiction…."[30]  "The federal diversity statute, 28 U.S.C. § 1332(a)(2), states that federal courts have jurisdiction over all civil actions between citizens of a state and citizens or subjects of a foreign state where the amount in controversy exceeds $75,000, exclusive of interest and costs." "The party seeking to invoke federal jurisdiction has the burden to prove by a

---

entity, were sued" and thus the citizenship of a trust traditionally involving a "'fiduciary relationship' between multiple people," which is not a distinct legal entity, takes the citizenship of the trustee. *Id.* at 383.

[26] R. Doc. 179-2, p. 2.

[27] R. Doc. 179-2, pp. 2-3 and *see id.* at p. 6, the 7/12/24 Affidavit of Barry DeGroot ("DeGroot"), General Counsel of DLP Real Estate Capital, Inc., verifying Plaintiffs' Supplemental Letter Brief on Diversity Jurisdiction.  DeGroot is also Baton Rouge Ventures' corporate representative.

[28] R. Docs. 170-171.

[29] *See*, Local Civil Rule 78(b) (oral argument is discretionary).

[30] *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).

preponderance of the evidence that federal jurisdiction exists. The basis for diversity jurisdiction must be "*distinctly* and *affirmatively* alleged."[31] "[28 U.S.C. § 1332] requires complete diversity, meaning that a federal court may not exercise diversity jurisdiction if any one of the plaintiffs is a citizen of the same state as any one of the defendants."[32] "[T]he jurisdiction of the court depends upon the state of things at the time of the action brought … It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal."[33] "The objection that a federal court lacks subject-matter jurisdiction…may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."[34]

## B. Arguments of the Parties

### 1. *Plaintiffs' Memorandum on Diversity Jurisdiction*

Plaintiffs' Memorandum on Diversity Jurisdiction, as supported by Barry DeGroot's[35] August 20, 2024 affidavit and a 2021 organizational chart ("2021 Chart") depicting the members and managers of Plaintiffs,[36] now explains that Baton Rouge Ventures' member, DLP Preferred Returns Equity Fund LLC, has as a member the newly disclosed DLP Housing REIT, LLC (the "Housing REIT"). Plaintiffs further allege that the sole member of the Housing REIT is DLP

---

[31] *Menendez v. Wal-Mart Stores, Inc.*, 364 Fed.Appx. 62, 65 (5th Cir. 2010) (internal citations omitted).

[32] *Menendez*, 364 Fed.Appx. at 65 (internal citations omitted).

[33] *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570–71 (2004) (citations omitted).

[34] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006), citing Fed. Rule Civ. Proc. 12(b)(1).

[35] DeGroot attests that he is General Counsel of DLP Real Estate Capital, Inc. and its related companies and the corporate representative for Baton Rouge Ventures. R. Doc. 178-1, p. 1, ¶1.

[36] The 2021 Chart applies to, and is the same for, the four properties Defendant attempted to acquire from Plaintiffs, *i.e.*, Park East I & II and Bellemont Victoria I & II. R. Doc. 182-3. Defendant refers to this chart in its Brief on Subject Matter Jurisdiction as the "REIT Ownership Chart." R. Doc. 179, p. 9.

Housing Fund LLC (the "Housing Fund"); "[t]he Housing Fund is owned by a collection of investor members with domiciles in various states;" and, "one of the investors in the Housing Fund, Mr. Warren Esanu, [is domiciled in] the State of New York."[37]  These allegations are vastly different from what Plaintiffs pleaded in their amended Complaint in response to this Court's October 19, 2020 briefing Order (*see above*). In his most recent Affidavit, which Plaintiffs aver is competent evidence,[38] DeGroot attests that, to determine the citizenship allegations in the original Complaint, he consulted a 2018 organizational chart depicting the members and managers of Plaintiffs.[39] The 2018 organizational chart reflected direct individual investor members in DLP Preferred Returns Equity Fund LLC; however, "upon confirming that DLP Preferred Returns Equity Fund LLC no longer had individual investors (as of 2020)," DeGroot then relied on a 2020 organizational chart in preparation for the filing of the Complaint.  DeGroot attests that he believed the 2020 organizational chart was accurate, and that complete diversity existed between the parties.[40] Plaintiffs also submitted a Fed. R. Evid. 1006 exhibit list with their briefing, which states that "The 2020 chart …confirms that DLP Preferred Returns Equity Fund LLC no longer had direct individual investor members…because those investors exchanged their interests for interests in [the Housing Fund] (as noted in the 2020 audited financial statements….)."[41]

---

[37] R. Doc. 178, pp. 1-2; R. Doc. 178-1 (DeGroot Affidavit); and R. Doc. 182-3 (2021 Chart).

[38] R. Doc. 178, pp. 4-5, citing *MidCap Media Finance, L.L.C. v. Pathway Data, Inc.*, No. 15-60, 2019 WL 6699789, *2, n. 2 (W.D. Tex. Dec. 9, 2019) and *Edmondson v. Cedar Park Health Sys., L.P.*, No. 17-1030, 2018 WL 4677897 (W.D. Tex. June 8, 2018) report and recommendation adopted, *Edmondson v. Cedar Park Health Sys., L.P.,* No. 17-1030, 2018 WL 4701812, at *1 (W.D. Tex. July 30, 2018).

[39] Defendant refers to the 2018 Chart as the "Greystone Organizational Chart."   In connection with DeGroot's allegations regarding the 2018 chart, DeGroot's Affidavit refers to "DLP Preferred Returns Credit [not "Equity"] Fund LLC," which appears to be a mistaken reference to DLP Preferred Returns Equity Fund LLC.

[40] R. Doc. 178-1, ¶ 3 ("Upon review of the 2020 Organizational Chart, it was my understanding that the Organizational Chart was accurate, and that complete diversity existed between the parties."); R. Doc. 182-1 (2018 Chart); and R. Doc. 182-2 (2020 Chart).

[41] R. Doc. 178-2, pp. 1-2 and *see* R. Doc. 182-6, p. 9 ("During 2020 and in connection with the Housing Fund's formation, certain members in the DLP Preferred Returns Equity Fund LLC transferred their interest into the REIT. The transfer consisted of 11 investments with a total net asset value of $22,838,440.").

DeGroot contends that his prior responses, testimony, and certifications of citizenship throughout this proceeding were correct based on his belief that the 2020 organizational chart was accurate.[42]    However, Plaintiffs say the Fifth Circuit's briefing Order, requesting further information about the beneficiaries of the Wenner Trust, prompted further review of citizenship. It was then that DeGroot consulted the 2021 Chart, which reflected that: "[The Housing Fund, which is owned by investor members] was the sole owner of [the Housing REIT], which was the sole owner of DLP Preferred Returns Equity Fund LLC."  DeGroot attests that he then confirmed that the Housing Fund was an owner of Plaintiff Baton Rouge Ventures at the time of the September 21, 2020 Complaint by reviewing the Housing Fund's year-end 2020 audited financial statements.[43] Notes to the 2020 financial statements indicate that the Housing Fund was formed in December 2019 and commenced operations on January 1, 2020; the Housing REIT was formed on January 7, 2020; the Housing Fund owns 100% of the common shares of the Housing REIT; and the Housing REIT's investments are held through its "wholly owned subsidiaries, DLP Preferred Equity Fund, LLC…," which is consistent with the 2021 Chart.[44]  DeGroot also confirmed that, "at the time of the filing of the Complaint in this action, [the Housing Fund], had at least one (1) investor member who was a citizen of the state of New York," by reviewing Esanu's May 2020 Subscription Agreement, and Esanu's 2020 Form 1065 Schedule K-1 statement reporting his membership shares in the Housing Fund.[45]

Plaintiffs assert that the issue of subject matter jurisdiction can be raised at any time, and they had an obligation to disclose that Esanu was an investor in the Housing Fund and domiciled

---

[42] R. Doc. 178-1, ¶¶3-4; R. Doc. 182-2 (2020 organizational chart, which applies to the same four properties, *i.e.*, Park East I & II and Bellemont Victoria I & II); R. Doc. 179-16, pp. 12-13 (DeGroot's 30(b)(6) deposition testimony).

[43] R. Doc. 178-1, ¶¶5-7; R. Doc. 182-6 (Housing Fund's 12/31/20 audited financial statements).

[44] R. Doc. 182-6, p. 9.

[45] R. Doc. 178-1, ¶8; R. Doc. 182-4 (Esanu Subscription Agreement); R. Doc. 182-5 (Esanu K-1).

in New York before and after the filing of the September 21, 2020 Complaint, the applicable date on which jurisdiction must be measured.[46] Plaintiffs argue that because the Court lacks diversity, the case must be dismissed with prejudice and without consideration of the issues of finality, efficiency, and economy.[47]

   2. *Defendant's Brief on Subject Matter Jurisdiction and Response to Plaintiffs' Memorandum*

   Defendant argues that Plaintiffs adequately established diversity subject matter jurisdiction early in the case, and then "*repeatedly* confirmed its organization chart and that of its members," throughout the litigation.[48]   Defendant notes that DeGroot's most recent Affidavit contradicts DeGroot's three prior Declarations and it unclear which is true and correct.[49]   However, Defendant admits that its own research of SEC filings reflects that a 2020 Circular relating to another DLP entity, which was filed eighteen days before the Complaint in this case, shows that DLP Preferred Returns Equity Fund LLC was formed in 2018 and has many individual investors. Defendant

---

[46] R. Doc. 178, pp. 1-2, citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001), and *Grupo Dataflux*, 541 U.S. at 570.  DeGroot attests that the 2021 Chart was produced to Defendant during post-judgment discovery in another matter, but he did not review it for diversity purposes at the time it was produced. R. Doc. 178-1, ¶ 11.

[47] R. Doc. 178, pp. 3-8.

[48] R. Doc. 179, p. 13 (emphasis in original).

[49] R. Doc. 179, p. 13.  Defendant details the multiple prior instances where Plaintiffs alleged that diversity jurisdiction existed and/or confirmed Plaintiff Baton Rouge Ventures' diverse membership structure; *to-wit* (and in pertinent part): DeGroot submitted Declarations made under penalty of perjury in support of Plaintiffs' summary judgment motion, in opposition to Defendant's summary judgment motion, and in support of a request to reset the trial date, all of which attested, consistent with the amended Complaint, that Plaintiffs were comprised of Florida citizens, including the allegations regarding the citizenship of DLP Preferred Returns Equity Fund LLC. R. Doc. 60-7, intro. paragraph and ¶4; R. Doc. 69-26, intro. paragraph and ¶4; and R. Doc. 83-3, intro. paragraph  and ¶4.  Additionally, the same 2020 organizational chart upon which DeGroot originally relied for identifying Plaintiffs' citizenship, discussed above, was produced to Defendant pursuant to a subpoena, and was also jointly stipulated to by the parties at trial.  R. Doc. 179-12 and R. Doc. 136-3.  In response to post-Judgment discovery, Plaintiffs stated that no changes were made to Baton Rouge Ventures' ownership structure "since the commencement of the captioned litigation." R. Doc. 179-13, p. 5. Plaintiffs also alleged complete diversity of citizenship in their March 11, 2024 appellate brief.  No. 23-30741, R. Doc. 26-1, p. 9 (5th Cir. Mar. 11, 2024).

argues this information was known to Wenner and DeGroot as of September 3, 2020.[50]  A U.S.

Securities and Exchange Commission "Form D Notice of Exempt Offering of Securities," filed on

June 11, 2018 by DLP Preferred Returns Equity Fund LLC six months after it was organized, also

reflects that DLP Preferred Returns Equity Fund LLC is a real estate investment fund.[51]  Defendant

acknowledges that this information is consistent with the 2018 and 2021 charts, which show that

DLP Preferred Equity Returns LLC has individual investor members;[52] and with the purpose of

DLP Preferred Returns Equity Fund LLC, as set forth in the SEC filings and as testified to by

DeGroot, *i.e.*, it is an investment fund, offering equity investments in real estate.[53]   Notably,

Defendant admits that, as a real estate investment fund, the citizenship of DLP Preferred Returns

---

[50] R. Doc. 179, p. 14, citing R. Doc. 179-17, pp. 1, 44 (2020 Circular relating to "DLP Positive Note Fund, LLC" signed by Wenner with a submittal date of 9/3/20, and giving this description of DLP Preferred Returns Equity Fund LLC (as an example of prior performance): "DLP Preferred Returns Equity Fund was organized on January 16, 2018 as a Delaware limited liability company for the primary purpose of providing preferred equity investments in real estate. DLP Preferred Returns Equity Fund LLC commenced a private placement…The offering is a $200,000,000 offering consisting of the sale of membership units.  The offering commenced on February 8, 2018. DLP Preferred Returns Equity Fund LLC has raised $21,620,339 and has been closed.") and R. Doc. 179-18 (Delaware Secretary of State Filing).

[51] R. Doc. 179, p. 15, citing R. Doc. 179-19 (Form D signed by Wenner).

[52] In response to post-Judgment discovery, Plaintiffs produced the 2018 organizational chart and 2021 Chart in December 2023 and February 2024. As described above, the 2018 organizational chart differs from both the 2020 organizational chart and the 2021 Chart but is similar to the 2021 Chart to the extent both 2018 and 2021 Charts both reflect investor members. R. Doc. 179, pp. 8-10, citing R. Doc. 179-14 and 179-15.  In Defendants' post-Judgment Motion to Compel, Defendant questioned the discrepancies in the 2018 and 2021 charts as compared with the 2020 chart Plaintiffs produced during fact discovery.  Plaintiffs responded that any conflicts in the charts were more properly addressed in a corporate deposition, not in the context of a motion to compel. R. Doc. 179, p. 10, citing R. Docs. 160-1 and 164.

[53] R. Doc. 179, p. 10, citing R. Doc. 179-16 (DeGroot (30(b)(6) deposition transcript).  DeGroot testified in June 2024 that he was familiar with the 2021 Chart. He also testified that property acquisitions were financed 90-93% by individual investors, and only 7-10% by DLP Capital Partners LLC and Wenner. *See,* R. Doc. 179-16, pp. 9-10: "Typically, if DLP acquires an asset, say a multifamily property, the rule of thumb in most cases is the fund would be 90 to 93 percent, which would be the investors, and then DLP Capital Partners and Mr. Wenner, through an SPE [Special Purpose Entity], would make up the other, you know, 7 to 10 percent….  Under the fund documents, there's an obligation to co-invest alongside the investors, so we bear some risk, as well."  DeGroot's testimony thus reflects that the 2020 organizational chart on which DeGroot originally relied was inaccurate because it listed no investor members at any level of Baton Rouge Ventures' membership structure (whether as direct investor members, or as beneficial members of upstream, related special purpose entities), which is inconsistent with his stated understanding of how the entity structure was intended to function.

Equity Fund LLC is determined by that of its members per *Americold Realty Trust*, and that, "if the latest version of the facts are the true facts, subject matter jurisdiction may be lacking,"[54]

Defendant's Response to Plaintiffs' Memorandum challenges DeGroot's Affidavit because, unlike DeGroot's three prior Declarations, it is not made under penalty of perjury or with personal knowledge, nor does it specifically attest to Baton Rouge Ventures' membership structure. Defendant further attacks the Affidavit on the grounds that DeGroot does not explain the differences in the two charts he initially consulted (2020 organizational chart versus the 2018 organizational chart), which could weigh on the diversity issue; DeGroot does not explain how he confirmed that DLP Preferred Returns Equity Fund LLC no longer had individual investors as of 2020, thus leading to his reliance on the 2020 Chart when the Complaint was filed; and, if Plaintiffs had acted sincerely in determining their own citizenship, they would have long ago provided the information they now contend destroys diversity, *i.e.*, the Housing Fund's 2020 financial statements and Esanu's K-1 and Subscription Agreement.[55] Defendant also points out that, while the 2021 Chart was allegedly created (likely by DeGroot) on September 23, 2021 per DeGroot's Affidavit, DeGroot executed his three Declarations *after* that date, attesting to Baton Rouge Ventures' membership structure consistent with the 2020 Chart.[56] In conclusion, Defendant

---

[54] R. Doc. 179, p. 15.

[55] R. Doc. 183, pp. 2-5, citing DeGroot's three prior Declarations at R. Docs. 179-8 through 179-10. Defendant additionally argues that Plaintiffs' authority is distinguishable. R. Doc. 183, pp. 6-9 (*e.g.*, distinguishing *MidCap Media. Fin.*, 2019 WL 6699789, on the grounds that adequate evidence of diversity did not exist in the record of that case prior to being questioned by the Fifth Circuit, unlike here, where diversity was established by the record and the Fifth Circuit asked for supplemental briefing on the *res nova* issue of the citizenship of a trust (which was academic, according to Defendant, because Wenner's complete transcript was part of the appellate record and established that both the trustees and beneficiaries were diverse from Plaintiffs); because in *Mid-Cap*, jurisdiction was first questioned on appeal, unlike here, where it was questioned immediately and Plaintiffs seemingly complied with the briefing Order and established jurisdiction; and because in *Mid-Cap*, the judgment plaintiff, who invoked jurisdiction, introduced substantial evidence in support of jurisdiction on remand, whereas here, Plaintiffs' evidence is "incomplete, inconsistent, and unverified.").

[56] R. Doc. 183, p. 4. Defendant also points out that Wenner testified in November 2021 that DeGroot, along with others, handles setting up legal entities, and the only chart Wenner had seen was the 2020 organizational chart. *Id.*, citing R. Doc. 179-17, p. 8.

informally requests that Plaintiffs be ordered to produce organizational information, including charts and metadata, for DLP Preferred Returns Equity Fund LLC, DLP PREF Management, the Housing REIT, the Housing Fund, and the individual investors' interests in those entities, from the date of formation (as applicable), until the filing of the September 21, 2020 Complaint.[57]

### 3. Plaintiffs' Reply

Plaintiffs contend that Defendant's allegation that DeGroot and Wenner were aware that DLP Preferred Returns Equity Fund LLC had individual investors in 2020, based on DLP Preferred Returns Equity Fund LLC's June 2018 Form D and the 2020 Offering Circular of a related entity, is a presumption that fails. While DLP Preferred Returns Equity Fund LLC had individual investor members in 2018, per the 2018 organizational chart, by 2020, DLP Preferred Returns Equity Fund LLC's structure had changed such that the Housing REIT was its sole member. This is supported by the Housing Fund's 2020 audited financial statements, which note that the Housing REIT's investments were held by DLP Preferred Returns Equity Fund LLC, and that during 2020, some members of DLP Preferred Returns Equity Fund LLC transferred their interests into the Housing REIT.[58] Plaintiffs point out that the 2020 Offering Circular relied on by Defendant also supports that DLP Preferred Returns Equity Fund LLC no longer had direct investor members by 2020 because the Circular notes that DLP Preferred Returns Equity Fund LLC "has been closed" to investors.[59]

Notwithstanding the foregoing, Plaintiffs acknowledge that the Housing Fund and the Housing REIT were "beneficial owners" of Plaintiff Baton Rouge Ventures at the time the

---

[57] R. Doc. 183, p. 10.

[58] R. Doc. 184, p. 2, citing R. Doc. 182-6, p. 9 (mistakenly referred to by Plaintiffs as the audited financial statements of DLP Preferred Returns Equity Fund LLC).

[59] R. Doc. 184, pp. 1-2, citing R. Doc. 179-17, p. 44.

Complaint was filed, but Plaintiffs were not aware that the 2020 organizational chart, relied on by DeGroot to prepare for the Complaint, did not reflect their ownership. Plaintiffs aver that, although DeGroot is a principal and General Counsel for the DLP family of companies, he does not have intimate knowledge of the structure of all of them (numbering more than 400), and he is not the only person responsible for overseeing them.[60]

### C. Complete Diversity of Citizenship Has Not Been Established

As the party invoking this Court's jurisdiction, Plaintiffs bear the burden to establish that it existed when the Complaint was filed. As both parties acknowledge, following the October 19, 2020 briefing Order, Plaintiffs provided adequate citizenship allegations and it appeared that complete diversity of citizenship existed, so the case was allowed to proceed. In response to the Fifth Circuit's briefing Order (on a different citizenship issue), Plaintiffs newly alleged that their citizenship allegations for one of the members of Plaintiff Baton Rouge Ventures, *i.e.*, DLP Preferred Returns Equity Fund LLC, were incorrect. Specifically, Plaintiffs alleged that, at the time the September 21, 2020 Complaint was filed, and contrary to the 2020 organizational chart upon which they originally relied, DLP Preferred Returns Equity Fund LLC was comprised of the following members (in pertinent part):[61] the Housing REIT, which is comprised of one member, the Housing Fund. The Housing Fund, in turn, is comprised of a manager and individual investor

---

[60] R. Doc. 184, pp. 2-3.

[61] While not addressed by Plaintiffs, the 2021 Chart also lists another "branch" of underlying members for DLP Preferred Returns Equity Fund LLC as being comprised of manager DLP PREF Management LLC, which has DLP Capital Partners LLC as its sole member, which has DLP Real Estate Capital Inc., as its manager and the Don and Carla Wenner Living Trust as its member, of which Wenner and Carla Wenner are co-Trustees. The citizenship of some of these entities (and Wenner) were previously alleged in connection with the citizenship pleading of other members of Plaintiff Baton Rouge Ventures, but citizenship pleading for entities not previously identified is unnecessary due to the non-diverse citizenship of investor member Esanu.

members, one of whom, Esanu, is not diverse from Defendant because they are both New York citizens.

In support of these allegations, Plaintiffs have introduced the Housing Fund's 2020 year-end audited financial statements, which are corporate business records and competent evidence.[62] Notes to the financial statements indicate that the Housing Fund was formed in December 2019 and commenced operations on January 1, 2020; the Housing REIT was formed on January 7, 2020; the Housing Fund owns 100% of the common shares of the Housing REIT (and therefore, at some point in 2020, the Housing Fund was the Housing REIT's sole member); and the Housing REIT's investments are held through its "wholly owned subsidiaries, DLP Preferred Equity Fund, LLC…" (and therefore, at some point in 2020, the Housing REIT was DLP Preferred Equity Fund, LLC's sole member), all of which is consistent with the 2021 Chart.[63]  Notably, Defendant does not substantively contest any of these allegations or offer contradictory evidence.[64]  In fact, Defendant acknowledged that its own research revealed that a June 2020 Circular relating to another DLP entity, filed eighteen days before the Complaint in this case, reported that DLP Preferred Returns Equity Fund LLC "had many individual investors."[65]

---

[62] R. Doc. 182-6 (Housing Fund's 12/31/20 audited financial statements) and Fed. R. Evid. 803(6) (Records of a Regularly Conducted Activity).

[63] R. Doc. 182-6, p. 9; R. Doc. 182-3 (2021 Chart).

[64] DeGroot's Affidavit was sworn and notarized before a commissioned notary; therefore, it is competent evidence on the issue of jurisdiction. R. Doc. 178-1, p. 3. That said, the Affidavit is (with the exception of its allegations regarding Esanu), unnecessary for the resolution of the citizenship of DLP Preferred Returns Equity Fund LLC in light of the business records Plaintiffs have introduced, which Defendant has not contested. For this reason, for lack of a formal motion, and because Defendant offers only speculation as to what additional discovery might reveal, Defendant's informal request for jurisdictional discovery should be denied as a matter of discretion.  *See Edmonson,* 2018 WL 4677897 at *4 (noting that jurisdictional discovery is discretionary, and holding: "The court does not believe jurisdictional discovery should be undertaken when the party requesting such discovery can only suggest or speculate that the requested discovery will shed light on the issues pertaining to diversity of citizenship.") (citing *NL Industries, Inc. v. OneBeacon Am. Ins. Co.*, 435 F.Supp.2d 558, 566 (N.D. Tex. 2006)) and *see Mid City Tower, LLC v. Certain Underwriter's at Lloyd's London,* No. 21-440, 2023 WL 7064162, at *3 (M.D. La. Oct. 26, 2023) (accord, citing *id.*).

[65] R. Doc. 179, p. 14, citing R. Doc. 179-17, p. 44.

The notes to the Housing Fund's 2020 audited financial statements also state that the Housing Fund is comprised of individual investor members/owners, *to-wit*:

> The Company [the Housing Fund] was formed by initial and ongoing capital contributions from various investors (the "Members") in addition to a transfer of interest from the REIT discussed below…. During 2020 and in connection with the Housing Fund's formation, certain members in the DLP Preferred Returns Equity Fund LLC transferred their interest into the REIT. The transfer consisted of 11 investments with a total net asset value of $22,838,440. With respect to the REIT, 125 nonvoting preferred shares were issued to 125 individual shareholders…[66]

As evidence of the citizenship of individual Housing Fund investor, Esanu, Plaintiffs introduce additional competent business records and filings, including Esanu's Housing Fund Investor Questionnaire and Subscription Agreement, both signed on May 4, 2020. In the "Subscription Agreement To Become A Member of [the Housing Fund]," Esanu agreed to purchase LLC interests in the Housing Fund.[67]  Plaintiffs also introduced Esanu's 2020 Form 1065 Schedule K-1, reporting Esanu's shares in the Housing Fund.[68]  The Subscription Agreement and K-1 indicate that Esanu was a member of the Housing Fund, likely by June 2020.[69]  Furthermore, both the Subscription Agreement and Investor Questionnaire list Esanu's New York mailing address, and significantly, the Investor Questionnaire states that Esanu's "Domicile address" is the same as his New York mailing address, which Defendant does not contest.[70]  DeGroot also attests that Esanu

---

[66] R. Doc. 182-6, p. 9.  The notes go on to explain that "125 nonvoting preferred shares were issued to 125 individual shareholders, … which are required to maintain the REIT's tax status as a real estate investment trust." *Id.*

[67] R. Doc. 182-4, p. 8 (Investor Questionnaire and Subscription Agreement).

[68] R. Doc. 182-5 (K-1).

[69] R. Doc. 182-4, p. 26 ("I/We understand and agree my/our subscription will become effective on the first (1st) day of the month following acceptance of the subscription (the "Effective Date")," *i.e.*, June 4, 2020, one month from Esanu's acceptance on May 4, 2020.  DeGroot attests that Esanu is still a beneficial owner. R. Doc. 178-1, p. 2, ¶8.

[70] R. Docs. 182-4, p. 1.

is a New York citizen.[71]  In light of Esanu's "domicile address" disclosure and DeGroot's Affidavit, Plaintiffs have introduced sufficient evidence to show that Esanu is a New York citizen, which destroys diversity jurisdiction in this case.

While the notes to the Housing Fund's 2020 year-end financials do not reflect at what point in 2020 the Housing Fund acquired 100% of the REIT, or when in 2020 the REIT's investments became wholly-owned by DLP Preferred Returns Equity Fund LLC, Plaintiffs have sufficiently established that DLP Preferred Returns Equity Fund LLC's membership structure did unwind to the Housing REIT and then to the Housing Fund in 2020, and have established that Esanu was a Housing Fund member in 2020, all of which strongly appears to have occurred before the Complaint was filed in September 2020, based on the Housing Fund's commencement of operations on January 1, 2020 and Esanu's Subscription Agreement, dated in May 2020.  Plaintiffs, the parties who invoked jurisdiction, cannot sustain their burden of establishing that complete diversity of citizenship existed when the Complaint was filed, based on this information.  As the evidence provided establishes that the Court lacks subject matter jurisdiction (and lacked subject matter jurisdiction when the suit was filed), it is recommended that these findings be transmitted to the Fifth Circuit, per their Order.[72]

### D. A Hearing Should Be Held Regarding Sanctions Against Plaintiffs and/or Their Counsel

This case has been pending for over four years and proceeded through a three-day jury trial at considerable (and wasted) time and expense to the parties, to the jurors, and to the Court. Within a month of the suit's filing, the Court had raised the jurisdictional issue that adequate information

---

[71] R. Doc. 178-1, p. 2, ¶8. The record establishes and the parties agree that DeGroot has knowledge of the DLP entities. *Id*. at ¶1.

[72] R. Doc. 170, p. 3 ("[U]pon making this determination [regarding the citizenship of the parties], the district court shall return the case to this court for further proceedings.").

about the parties' citizenship was not provided in the original Complaint.[73] In response, Plaintiffs submitted an amended Complaint, with what purported to be corrected citizenship allegations, signed by counsel.[74] At several points throughout the litigation, these "corrected" citizenship allegations (which turned out to be incorrect) were reiterated under penalty of perjury and under counsel's Rule 11 obligations.

The timing of Plaintiffs' revised citizenship disclosures, after an adverse multi-million dollar verdict and in response to a Fifth Circuit briefing Order on an unrelated issue, is, at least, suspicious, particularly in light of DeGroot's deposition testimony about his knowledge of the three organizational charts at issue, his involvement in structing the entities, his role as general counsel, the timing of the disclosure of other information about the organizational structure compared to when suit was filed, and the fact that the structure of the DLP entities necessarily involved investor members.[75]

The Court retains "collateral" jurisdiction to determine sanctions under these circumstances, despite that it lacks subject matter jurisdiction.[76] Accordingly, it is recommended

---

[73] R Doc. 6.

[74] R. Doc. 7, p. 12.

[75] It is unclear why the 2020 chart does not list investor members at some level in the chain of members underlying Plaintiff Baton Rouge Ventures. DeGroot's statements raise questions as to why Plaintiffs (and/or their counsel) did not realize that the 2020 chart was inaccurate, for lack of a designation of investor members as "beneficial owners," in a timelier fashion and pursuant to their Fed. R. Civ. P. 11 obligations, considering that Plaintiffs attested to the (inaccurate) membership/ownership of Plaintiff Baton Rouge Ventures on several occasions, including as early as one month after Plaintiffs filed their Complaint in response to this Court's October 19, 2020 briefing order and as late as on appeal, and considering that the REIT had to have individual members to maintain its tax status. R. Doc. 182-6, p. 9.

[76] See, e.g., Ben E. Keith Co. v. Dining Alliance, Inc., 80 F.4th 695, 699 (5th Cir. 2023) ("In ordering [claim dispositive] sanctions, the district court instead relied on its collateral jurisdiction. Such jurisdiction permits a federal court to consider issues collateral to the merits even where it lacks subject matter jurisdiction. Willy v. Coastal Corp., 503 U.S. 131, 137–38, 112 S. Ct. 1076, 1080–81, 117 L.Ed.2d 280 (1992) [affirming the imposition of Fed. R. Civ. P. 11 sanctions despite a later determination that subject matter jurisdiction was lacking]. Common examples of 'collateral' issues include costs, attorney fees, sanctions, and contempt proceedings, as such proceedings do 'not signify a district court's assessment of the legal merits of the complaint.' Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396, 110 S. Ct. 2447, 2456, 110 L.Ed.2d 359 (1990)."). See also, Van Deelen v. Jones, No. 23-3729, 2024 WL 3852349, at *16

that, after notice and a reasonable opportunity to respond, the Court set a hearing on the potential imposition of sanctions against Plaintiffs and/or their counsel, under its inherent power to issue sanctions,[77] Fed. R. Civ. P. 11,[78] or otherwise applicable authority, as warranted.[79]

## III. RECOMMENDATION

It is Plaintiffs' burden to establish this Court's subject matter jurisdiction by a preponderance of the evidence, which Plaintiffs cannot sustain in this case due to Plaintiffs' recent introduction of evidence that shows that complete diversity of citizenship was lacking at the time the Complaint was filed.

Accordingly,

---

(S.D. Tex. Aug. 16, 2024) ("[A]lthough the Court lacks subject matter jurisdiction over most of the Plaintiff's claims, it nonetheless retains jurisdiction over Kirkland's [Fed. R. Civ. P. 11] sanctions motion.") (citations omitted).

[77] *See Elliott v. Tilton,* 64 F.3d 213, 217 (5th Cir. 1995) ("[T]his Court has held that '[i]n order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith'.'").

[78] Fed. R. Civ. P. 11 provides, in pertinent part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation…(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery….(c) Sanctions. (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

[79] This case is different than the cases cited in Plaintiffs' opening brief for the proposition that jurisdiction can be questioned for the first time on appeal. *See,* R. Doc. 178, pp. 3-5. While that is a correct statement of the law, in those cases there was inadequate information in the record to establish subject matter jurisdiction. Here, the Court raised subject matter jurisdiction less than a month after the case was filed and Plaintiffs are now saying the information they provided to support jurisdiction at that time was not inadequate, but incorrect. This case is also different from *Capps v. Newmark S. Region, LLC,* 53 F.4th 299, 303 (4th Cir. 2022), cited by Plaintiff at R. Doc. 178, p. 5 ("[w]hile the court noted that '[n]either side of this dispute lacked the means to ascertain Newmark's citizenship at any point…this Court will not condone the exercise of jurisdiction where it did not truly exist.'"). Here, not only *could* Plaintiffs ascertain their own citizenship, but they repeatedly provided incorrect information about that citizenship, including when ordered by this Court to correct their citizenship allegations. While these distinctions do not go to the issue of whether a lack of subject matter jurisdiction can be raised at any time, they are relevant to the issue of sanctions.

**IT IS RECOMMENDED** that findings be issued to the United States Fifth Circuit Court of Appeals that, at the time suit was filed, a member of Plaintiff Baton Rouge Ventures, LLC, DLP Preferred Returns Equity Fund LLC, unwound to include an individual investor member, Warren Esanu, who is domiciled in New York, which made Baton Rouge Ventures non-diverse from Defendant Cedar Grove Capital, LLC, which unwound to two individuals members, Aaron Gorin and Steven Levitz, both New York citizens, such that this case should be dismissed, without prejudice, for lack of subject matter jurisdiction.

**IT IS FURTHER RECOMMENDED** that, as the Court retains collateral jurisdiction to determine sanctions notwithstanding subject matter jurisdiction, a hearing be held for the consideration of sanctions against Plaintiffs and/or their counsel based on repeated representations in this case that the citizenship allegations originally provided, which established complete diversity, were correct.

**IT IS ORDERED** that the Motion for Expedited Consideration, filed by Defendant Cedar Grove Capital, LLC, is **DENIED AS MOOT**.[80]

Signed in Baton Rouge, Louisiana, January 21, 2025.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[80] R. Doc. 187.